LAWYERS FOR CLEAN WATER, INC.
Layne Friedrich (Bar No. 195431)
       Email:  layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
       Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>JENSEN ENTERPRISES, INC. dba JENSEN PRECAST, a California corporation,<br><br>                    Defendant. | Civil Case No. 2:14-CV-01253 MCE DAD<br><br>**JOINT STATUS REPORT;**<br>**REQUEST FOR ENTRY OF CONSENT DECREE;**<br>**ORDER**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

        Plaintiff California Sportfishing Protection Alliance and Defendant Jensen Enterprises, Inc. dba Jensen Precast file this joint status report pursuant to this Court's September 23, 2014 Minute Order. On Novembver 7, 2014, the Federal Agencies filed a "Statement of Non Objection to Consent Decree" indicating that they have no objection to entry of the Consent Decree. The parties request that the Court enter the Consent Decree, filed concurrently herewith, which includes a request that the Court retain jurisdiction to enforce the terms of the Consent Decree if necessary.


        Respectfully submitted,


By: _____        By: _/s/ as authorized on November 13, 2014____
        Layne Friedrich                                Diane Kindermann Henderson
        Attorneys for Plaintiff                        Attorneys for Defendant

---

Consent Decree; Order                                    Case No. 2:14-cv-01253 MCE DAD

LAWYERS FOR CLEAN WATER, INC.
Layne Friedrich (Bar No. 195431)
    Email:  layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
    Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155


*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit corporation,<br><br>               Plaintiff,<br><br>      vs.<br><br>JENSEN ENTERPRISES, INC. dba JENSEN PRECAST, a California corporation,<br><br>               Defendant. | Civil Case No. 2:14-cv-01253 MCE DAD<br><br>**CONSENT DECREE;**<br>**ORDER**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and Defendant Jensen Enterprises, Inc. dba Jensen Precast ("Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife, and the natural resources of all waters of California, including the Sacramento River, the American River, and the Sacramento-San Joaquin River Delta;

**WHEREAS**, Defendant is an owner and/or operator of the concrete product manufacturing and fabrication facility located at 5400 Raley Boulevard, in Sacramento, California 95838 ("Jensen Precast Facility" or "Facility");

**WHEREAS**, Plaintiff contends that Defendant discharges polluted storm water into Magpie Creek, which flows to Steelhead Creek, which discharges to the Sacramento River.

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA").

**WHEREAS**, on March 21, 2014, Plaintiff served Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board") with a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the CWA, 33 U.S.C. § 1365(a) and (b). The Notice Letter alleged violations of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and violations of the Storm Water Permit.

**WHEREAS**, on May 21, 2014, Plaintiff filed a complaint against Defendant, in the United States District Court, Eastern District of California (Case No. 2:14-cv-01253-MCE-DAD) alleging ongoing violations of the CWA (hereinafter "Complaint").

**WHEREAS**, Defendant denies all allegations in the Notice Letter and Complaint;

**WHEREAS**, Plaintiff and Defendant have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings and without any admission of liability on the part of the Defendant.

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Eastern District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365;

4.      Plaintiff has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any pending motion to enforce this Consent Decree.

**I.      AGENCY REVIEW AND TERM OF CONSENT DECREE.**

6.      Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer within a reasonable amount of time to attempt to resolve the issue(s) raised by the Federal Agencies.

7.      The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the forty-fifth (45th) day following the

1  Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide

2  notice that they require no further review, whichever occurs earlier.

3       8.     This Consent Decree will terminate three (3) years from the Effective Date, unless there

4  is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, in which

5  case the Consent Decree will terminate upon final resolution of the dispute.

6  **II.    COMMITMENTS OF THE SETTLING PARTIES.**

7      **A.    Storm Water Pollution Control Best Management Practices.**

8       9.     It is the express purpose of the Parties entering into this Consent Decree to further the

9  objectives set forth in the Clean Water Act and to resolve those issues alleged by CSPA in its

10  Complaint. In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to

11  comply with the provisions of this Consent Decree, the requirements of the Storm Water Permit, and all

12  applicable provisions of the CWA.

13      10.    In addition to maintaining the current structural and non-structural Best Management

14  Practices ("BMPs") described in the Facility's Storm Water Pollution Prevention Plan ("SWPPP"),

15  attached hereto as Exhibit A, Defendant shall (1) develop and implement BMPs identified herein, and

16  (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent

17  Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available

18  Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology

19  ("BCT") and to comply with the Storm Water Permit's Receiving Water Limitation C(1) and C(2).

20      11.    **Impervious Surfaces.**

21       a.  Sweeper. Prior to the 2014/2015 Wet Season,[1] Defendant shall continue to

22  implement BMPs to ensure that all impervious surfaces of the Facility, including the production and

23  storage areas, are swept with a sweeper at the conclusion of each day the Facility is in operation, and

24  with a regenerative sweeper two (2) times a week.

25       b.  Prior to the 2014/2015 Wet Season, Defendant shall install, and thereafter

26  maintain, a truck tire wash at the exits of Facility to minimize the tracking of pollutants from the Facility

27  to Vinci Road. The truck tire wash shall be used on each truck that exits the Facility.

28

[1] The Wet Season is October 1 – May 30.

a.   <u>Finished Product Storage Areas, Concrete Mixing and Forming Areas</u>. Prior to the 2014/2015 Wet Season, Defendant shall continue to implement BMPs to sweep all dust from hard surfaces that are accessible at least once a month and prior to any precipitation event where more than 0.1 inches of rain is predicted in Sacramento with a minimum likelihood of occurrence of fifty-percent (50%) by the National Weather Service, to remove aggregates, cement dust, sand, dirt debris and metals. To the extent practicable, Defendant shall cover all exposed finished concrete products prior to and during a rain event where more than 0.1 inches of rain is predicted in Sacramento with a minimum likelihood of occurrence of fifty-percent (50%) by the National Weather Service. The covering shall remain in place for the duration of the rain event.

c.   Defendant agrees to close or otherwise cover all dumpsters prior to and during rain events. The entire dumpster shall be closed and any covering used shall be intact and free of holes and tears.

12.   **Containment.**

a.   <u>Hazardous Waste Storage Areas</u>. Prior to the 2014/2015 Wet Season, all hazardous waste shall be stored indoors when possible, or under cover, in above ground containers with secondary containment.

b.   <u>Vehicle Maintenance, diesel fuel, hydraulic fluid storage and use</u>. Defendant shall continue to conduct all regular and routine vehicle maintenance indoors. Defendant agrees that secondary containment shall be used in the diesel and fuel storage areas, and the chemical storage areas. Defendant shall develop and implement BMPs to prevent the exposure of fuel and vehicle fluids from exposure to storm water including having spill response kits.

c.   <u>Aggregate Materials</u>. Prior to the 2014/2015 Wet Season, Defendant shall develop and implement BMPs to ensure all aggregate material storage areas are maintained to prevent migration of materials from the designated storage areas. Defendants shall sweep all materials back into their respective storage locations at the end of each day the Facility is in operation. Prior to and during rain events, Defendant shall cover or tarp, which shall be intact and free of holes and tears, all sand storage areas, and use straw waddles around all other aggregate material storage areas.

13.   **Perimeter Inspection and Storage.**

a.   Defendant shall inspect and maintain the perimeter of the Facility prior to each Wet Season and repair the perimeter border, as needed, to prevent storm water and/or unauthorized non-stormwater from discharging from the Facility perimeter.

b.   Prior to the 2014/2015 Wet Season, Defendant shall cease, and thereafter prevent, the storage of materials outside of the Jensen Precast Facility boundaries.

c.   Defendant only uses Vinci Avenue for short-term parking of trailers waiting to be hitched and picked up for off-site transport. Defendant shall cease using Vinci Avenue for this activity or for any industrial activity and/or operations by December 31, 2015. Until activities are no longer conducted on Vinci Avenue, Defendant shall develop and implement BMPs, such as using straw waddles and drain inlet protection at the storm drain inlets, and to the extent practicable shall use covering to prevent exposure of pollutants, resulting from Defendant's use of this area of Vinci Avenue, to storm water.  After each trailer is picked up, Defendant shall sweep the area, and inspect for staining, spills, leaks, or contamination, and shall implement BMPs to clean the area.

14.   **Capturing Sprinkler/Hydrant Testing Water and Preventing Non-Storm Water Discharges**.

a.   Prior to the 2014/2015 Wet Season, Defendant shall ensure that no water resulting from Jensen's sprinkler testing is discharged from the Facility prior to being dechlorinated.

b.   Prior to the 2014/2015 Wet Season, Defendant agrees to develop and implement BMPs to block off drainage inlets at the Facility when water is used at the Facility, including but not limited to, for dust suppressant, and vehicle cleaning or washing.

15.   **Coring Area.**

a.   Prior to the 2014/2015 Wet Season, Defendant shall develop and implement BMPs, such as berming, to prevent the runoff of water from the Coring Area to any drainage other than the designated drain inlet leading to the sump system.

b.   Prior to the 2014/2015 Wet Season, Defendant agrees to mitigate fugitive dust from the Coring Area, and sweep all dust from hard surfaces that are accessible at least once a month and prior to any precipitation event where more than 0.1 inches of rain is predicted in Rocklin with a minimum likelihood of occurrence of fifty-percent (50%) by the National Weather Service rain event to

1   remove cement dust and metals.

2          c.   To the extent practicable, Defendant agrees to cover all exposed concrete items

3   with a covering that shall be intact and free of holes and tears, prior to any precipitation event where

4   more than 0.1 inches of rain is predicted in Rocklin with a minimum likelihood of occurrence of fifty-

5   percent (50%) by the National Weather Service. The covering shall remain in place for the duration of

6   the rain event.

7   **B.     Storm Water Discharge Locations and Treatment.**

8          16.     Defendant shall maintain current BMPs, and if necessary, develop and implement

9   additional BMPs to prevent storm water from discharging from the Facility via any location except

10  Discharge Points S-1, S-2 and S-3, identified on the Facility site map attached as Exhibit 1.

11         a.   Discharge Point S-1 is located in the northwestern section of the Facility, and

12  collects storm water from several storm drain inlets throughout the northern portion of the Facility

13  before discharging to the municipal storm drain system.

14         b.   Discharge Point S-2 collects storm water flows from the southeastern portion of

15  the Facility, which discharges to the municipal storm drain system on Vinci Avenue.

16         c.   Discharge Point S-3 collects storm water flows from the southwestern portion of

17  the Facility, which discharges to the municipal storm drain system on Vinci Avenue.

18         17.     Defendant agrees to maintain the *StormVault* storm water retention system, which has a

19  capacity of approximately 77,800 gallons. Defendant shall implement and maintain, at a minimum, the

20  following drain inlet protections at each of the Facility inlets which may include the following: silt sack,

21  rock bags, absorbent booms, terratube filters, and straw wattles to allow filtration and ponding prior to

22  discharge to the drain inlet.

23  **C.     Storm Water Sampling.**

24         18.     Sampling. During the life of this Consent Decree, Defendant shall collect storm water

25  samples from each location storm water is discharged from the Facility from at least five (5) "qualifying

26  rain events" per Wet Season. The Facility's storm water discharge locations shall be identified on the

27  Facility site map, which shall be included in the SWPPP and M&RP. To the extent water is stored or

28  contained, Defendant shall sample the stored or contained water at the Facility discharge location, before

it is released even if not during operating hours, as required by Section 5(a) of the Storm Water Permit. All sampling shall be conducted as described in subparagraphs a. through i below.

       a.   A "qualifying rain event" is one where: (1) a discharge occurs during operating hours, and (2) there was no storm water discharge for three days prior to the rain event.

       b.   If, prior to March 1, Defendant has been unable to collect samples from two (2) qualifying storm events, Defendant shall satisfy the sampling requirements of this Consent Decree by sampling non-qualifying storm events.

       c.   Defendant shall analyze each storm water sample for the contaminants set forth in Table 1. Defendant can discontinue its storm water sample analysis of a parameter listed in Table 1 if (1) the concentration of the parameter does not exceed the Table 1 level in at least four (4) consecutive storm water samples and (2) Defendant certifies and demonstrates that the parameter is not used or associated with its industrial activity. Defendant shall contact Plaintiff at least ninety (90) days prior to discontinuing analysis for any required parameter by providing a written explanation for their decision and all relevant laboratory reports and supporting documentation.

       d.   A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

       e.   The laboratory shall use analytical methods adequate to detect the individual contaminants at or below the values specified in Table 1.

       f.   Except for pH, all samples collected from the Facility shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements, such as pH, Defendant shall use portable instruments, and not pH paper, which shall be calibrated and used according to manufacturers' instructions and approved industry methodology.

       g.   Defendant shall request that sample analysis results be reported to it within ten (10) days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

       h.   Defendant shall request that all sample results for metals be reported by the laboratory in both total and dissolved concentrations.

       i.   Defendant shall provide CSPA with the complete laboratory results, including a copy

of the Quality Assurance/Quality Control and the laboratory report for all samples collected at the

Facility, within seven (7) calendar days of receiving the results.

**D.      Reduction of Pollutants in Discharges.**

19.      Contaminant Reduction. Defendant shall develop and implement BMPs to reduce

pollutants in storm water discharges to levels below those in Table 1[2] The presence of any contaminant

in any discharge from the Facility in excess of the Benchmark values in Table 1 will not be considered a

breach of this Consent Decree provided Defendant has implemented BMPs that achieve BAT/BCT,

including, but not limited, to those identified in the Facility's SWPPP and in this Consent Decree.

**Table 1. Benchmark Values for Facility Discharges**

| Contaminant | Values | Source of Value |
|---|---|---|
| Total Suspended Solids | 100 mg/L | 2008 EPA Benchmark |
| Total Recoverable Copper | **0.0123 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Lead | **0.069 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Zinc | **0.11 mg/L** | 2008 EPA Benchmark |
| Oil and Grease | 15 mg/L | 2008 EPA Benchmark |
| Total Recoverable Aluminum | 0.750 mg/L | 2008 EPA Benchmark |
| Total Cadmium | **0.0018 mg/L** | 2008 EPA Benchmark |
| Total Recoverable Iron | 1.0 mg/L | 2008 EPA Benchmark |
| Total Recoverable Mercury | 0.0014 mg/L | 2008 EPA Benchmark |
| Biochemical Oxygen Demand | 30 mg/L | 2008 EPA Benchmark |
| Chemical Oxygen Demand | 120 mg/L | 2008 EPA Benchmark |
| pH | 6.5-8.5 units | Basin Plan |

20.      Action Plan for Table 1 Exceedances. If the result(s) from any sampling event(s)

conducted during a Wet Season reveals any contaminant at a concentration above the numeric values

specified in Table 1, Defendant shall submit a plan to Plaintiff for reducing the level of the

contaminant(s) to Table 1 levels ("Action Plan"). An Action Plan shall be submitted by June 1 following

the Wet Season during which the numeric value exceedance(s) occurs.

21.      Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1)

the identification of the contaminant(s) discharged in excess of the numeric value(s); (2) an assessment

---

[2] Several of the values in the table are hardness dependent, as indicated in boldface type. Values based
on 2008 EPA Benchmarks assume a hardness range of 75-100 mg/l $CaCO_3$ and can be adjusted
accordingly, *see* 2008 EPA Benchmarks, Appendix J.

of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including both preventing the exposure of pollutant and pollutant sources to storm water and treating storm water prior to discharge from the Facility that will reduce pollutant concentrations; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible but at least by the beginning of the upcoming Wet Season (i.e., by October 1) unless the Settling Parties agree on a later date based on the time needed to design, procure, and install the necessary equipment. Any disputes over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

22. Action Plan Review. CSPA shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments on the Action Plan. Within fifteen (15) days of Defendant's receipt of CSPA's comments on the Action Plan, Defendant shall consider CSPA's comments and shall either incorporate them into the Action Plan or, if Defendant declines to accept one or more of CSPA's comments, provide CSPA with a written explanation of the grounds for rejection. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

23. Defendant shall contact Plaintiff to request an extension of any deadline set forth in this Consent Decree, if necessary, to implement any structural BMPs requiring agency approval. Plaintiff's consent to Defendant's requested extension shall not be unreasonably withheld.

24. Defendant shall revise its SWPPP and/or Monitoring & Reporting Plan ("M&RP") as applicable within thirty (30) days of receipt of Plaintiff's comments to reflect the changes to the Action Plan. Defendant shall notify CSPA in writing when the Action Plan has been completely implemented, and the SWPPP and/or M&RP has been revised.

**E.   Visual Observations.**

25. All visual observations shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree. During the life of this Consent Decree, Defendant shall conduct

1   visual observations at each point where storm water is discharged during each rain event. Defendant

2   shall maintain logs of the visual observations which shall be included in Defendant's Annual Reports

3   submitted to the Regional Board, and within ten (10) days of Plaintiff's written request.

4   **F.      Employee Training.**

5          26.      Within sixty (60) days of the Effective Date, Defendant shall conduct additional

6   employee training in order to familiarize employees at the Facility with the requirements of the Storm

7   Water Permit and this Consent Decree. The training program shall include use of written training

8   materials needed for effective implementation of the training program. Defendant shall also ensure that

9   there are a sufficient number of employees assigned to implement the BMPs and conduct other

10  compliance activities required by the Storm Water Permit and this Consent Decree, and that these

11  employees are properly trained to perform the required activities.

12         27.      The training program shall require at least the following:

13         a.      Non-Storm Water Discharge Training. Defendant shall train employees on the Storm

14  Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm

15  water discharges are, which can result from improper practices that may produce non-storm water

16  discharges at the Facility, and how to detect and prevent them;

17         b.      BMP Training. Defendant shall train employees on BMP implementation and

18  maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of

19  pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to

20  ensure the proper treatment of storm water at the Facility;

21         c.      Sampling Training. Defendant shall designate an adequate number of employees to

22  ensure the collection of storm water samples from each discharge location as required by this Consent

23  Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols,

24  including chain of custody requirements, to ensure storm water samples are properly collected, stored,

25  and submitted to a certified laboratory.

26         d.      Visual Observation Training. Defendant shall provide training to all individuals

27  performing visual observations at the Facility pursuant to this Consent Decree and/or the Storm Water

28  Permit that includes when visual observations are required, the different types of visual observations

1    required, and instruction on proper record keeping under the Storm Water Permit.

2        28.    Training shall be provided on an annual basis, or as otherwise required to ensure

3    compliance with the terms of this Consent Decree, by a private consultant or a representative of

4    Defendant who is familiar with the requirements of this Consent Decree and the Storm Water Permit.

5    The training shall be repeated as necessary to ensure that employees are familiar with the requirements

6    of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP and M&RP, as appropriate

7    to the particular employee's job descriptions. Any new employee who is responsible for implementation

8    of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or

9    Consent Decree shall receive training within ten (10) days after being hired, or before being responsible

10   for compliance with the terms of the Storm Water Permit or Consent Decree.

11       29.    Defendant shall maintain training records to document compliance with Section II.F of

12   this Consent Decree, and shall make these records available for Plaintiff's review at the Facility. The

13   Training Program shall be specified in the SWPPP and Defendant shall modify the SWPPP as necessary

14   to reflect the training program required by this Consent Decree.

15   **G.    Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

16       30.    Within sixty (60) days of the Effective Date of this Consent Decree, Defendant shall

17   revise the Facility's SWPPP and/or M&RP as applicable to include:

18       a.    All BMPs that are currently utilized at the Facility;

19       b.    All BMPs identified and developed pursuant to this Consent Decree;

20       c.    The specific individual(s) responsible for compliance with the Storm Water Permit

21   and this Consent Decree, including specifying which individual is responsible for each area of

22   compliance (e.g., John Doe, collecting samples);

23       d.    A detailed site map that includes at a minimum all information required by the Storm

24   Water Permit and this Consent Decree;

25       e.    A description of each industrial activity, all potential pollutant sources, and each

26   potential pollutant associated with each industrial activity and/or pollutant source;

27       f.    Incorporate the requirements of the Storm Water Permit and this Consent Decree.

28       31.    Additional and Ongoing Revisions to SWPPP and M&RP. Defendant shall revise the

SWPPP and M&RP if there are any changes in the Facility's operations that may possibly affect the quality of storm water discharges at the Facility, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan. Defendant shall submit any revised SWPPP and M&RP to CSPA for review and comment within five (5) days of completion. CSPA shall provide comments, if any, to Defendant within thirty (30) days of receipt of any revised SWPPP and M&RP. Within thirty (30) days of receiving comments from CSPA, Defendant shall incorporate CSPA's comments into any revised SWPPP and M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

32.   _Commenting on the SWPPP and M&RP Revisions_. Defendant shall submit the revised SWPPP and M&RP to CSPA for review and comment as soon as they are completed, but in any event no later than sixty (60) days after the Effective Date. CSPA shall provide comments, if any, to Defendant within thirty (30) days of receipt of the revised SWPPP and M&RP. Within thirty (30) days after receipt of comments from CSPA, Defendant shall incorporate CSPA's comments into the SWPPP and M&RP, or shall justify in writing why any comment is not incorporated. Any disputes over the adequacy of the revised SWPPP and M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**H.   Compliance Monitoring and Reporting.**

33.   _Site Inspections_. Each year for the life of this Consent Decree, Plaintiff and its representatives may conduct up to two (2) noticed site inspections per Wet Season per year at the Facility during the life of this Consent Decree, one (1) dry weather additional inspection (for a total of three (3) per year), plus an additional inspection if there is a dispute regarding compliance with the terms of this Consent Decree. The site inspections shall occur during normal business hours, and Plaintiff shall provide Defendant with three (3) days notice of an intended inspection. If a Wet Season inspection is noticed, CSPA will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure CSPA catches a rain event producing a discharge during the inspection. During inspections, Plaintiff's representatives

must wear safety goggles, hard hats, vests, and appropriate clothing and footwear and remain in the presence of Defendant's representatives at all times.

34.     During the site inspection, Plaintiff and/or its representatives shall be allowed access to the Facility's SWPPP, M&RP, and other monitoring records, reports, and sampling data for the Facility. In addition, during the site inspection, Plaintiff and/or its representatives may collect samples of discharges from the Facility. Any samples collected by Plaintiff shall be submitted to a certified California laboratory for analysis in accordance with the provisions of Paragraph 14 of this Consent Decree. Copies of the complete laboratory reports shall be provided to Defendant within five (5) business days of receipt. Plaintiff shall bear all costs of inspection, sampling, and analysis using funds provided by Defendant pursuant to Paragraph 32.

35.     Compliance Monitoring and Oversight. Defendant shall pay Plaintiff Four Thousand Dollars ($4,000.00) per year during the term of the Consent Decree to help defray Plaintiff's costs of monitoring and overseeing Defendant's compliance with this Consent Decree. Payment shall be made within sixty (60) days after the Effective Date. Defendant's check shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and shall be delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129. Upon request, Plaintiff shall provide Defendant with documentation of the fees and costs incurred in connection with compliance monitoring and oversight activities. Any unexpended compliance monitoring funds remaining at the termination of this Consent Decree shall be refunded to Defendant within ten (10) business days after the date of termination. Upon request, Plaintiff will provide Defendants with a summary of the fees and costs incurred in connection with compliance monitoring and oversight activities.

36.     Action Plan Payments. If Defendant is required to submit an Action Plan to CSPA pursuant to this Consent Decree, Defendant shall make a Four Thousand Dollars ($4,000.00) Action Plan payment made payable to: "Lawyers for Clean Water Attorney Client Trust Account," and shall deliver such payment by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129 at the time the Action Plan is submitted to CSPA.

37.     Reporting and Documents. During the life of this Consent Decree, Defendant shall copy

Plaintiff on all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiff concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Defendant's compliance with the Storm Water Permit or storm water quality received by Defendant from any regulatory agency, State or local agency, county or municipality shall be provided to CSPA within five (5) calendar days of receipt by Defendant.

**I.      Environmental Project, Litigation Fees and Costs, and Stipulated Penalties.**

38.     Environmental Mitigation Project. To remediate environmental harms as alleged in the Complaint, Defendant shall pay Thirty Seven Thousand Five Hundred Dollars ($37,500.00) to be used to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed ("the Mitigation Payment"). The Mitigation Payment shall be paid to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to: 6008 College Avenue, Suite 10, Oakland, California 94618, Attention: Tim Little. The Mitigation Payment shall be made within ninety (90) days of the Effective Date, and Defendant shall concurrently provide Plaintiff with a copy of such payment.

39.     CSPA's Fees and Costs. Defendant shall partially reimburse CSPA for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing this lawsuit and negotiating a resolution of this matter, in an amount totaling Fifty Seven Thousand Five Hundred Dollars ($57,500.00). Such payment shall be made within thirty (30) days of the Effective Date, payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

40.     Stipulated Payment. The Defendant shall make a stipulated payment of One Thousand Dollars ($1,000.00) for each missed deadline included in this Consent Decree. Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed. The Stipulated Payment shall be paid to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to: 6008 College Avenue Suite 10, Oakland, California 94618, Attention: Tim Little. Defendant shall make the Stipulated

Payment within thirty (30) days of a missed deadline. Defendant shall provide Plaintiff with a copy of such payment at the time it is made.

41.   Interest Payments. In the event of late payment of any of the sums due under this Consent Decree, the Defendant shall pay ten percent (10%) APR interest to Plaintiff, which shall accrue from the first day past the date the payment was due until the date Defendant tenders payment. All such payments shall be made payable to: "Lawyers for Clean Water Attorney Client Trust Account" and delivered by certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004-A O'Reilly Avenue, San Francisco, California 94129.

**III.   DISPUTE RESOLUTION.**

42.   This Court shall retain jurisdiction over this matter until the Consent Decree terminates in accordance with Paragraph 8 for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

43.   Meet and Confer. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of twenty (20) calendar days from the date of the notice.

44.   If the Settling Parties cannot resolve a dispute by the end of informal meet and confer negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Eastern District of California.

45.   Burden of Proof.

a.   Except as provided in subparagraph (b) below, the burden of proof for Formal Dispute Resolution shall be in accordance with applicable law.

b.   In the event of any disagreement or dispute between Plaintiff and Defendant over the necessity or appropriateness of implementing any particular BMP or set of BMPs, Defendant shall bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the Facility, or

1  that they are in compliance with the terms of this Consent Decree. Plaintiff shall not be required to prove

2  that Defendant's BMPs do not constitute BAT/BCT.

3      46.     Litigation costs and fees incurred in conducting meet and confer or otherwise addressing

4  and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in

5  accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§1365 and

6  1319, and case law interpreting that standard.

7  **IV.    <u>MUTUAL RELEASE OF LIABILITY.</u>**

8      47.     <u>CSPA's Release</u>. Upon the Effective Date of this Consent Decree, CSPA, on its own

9  behalf and on behalf of its current and former officers, directors, employees, subsidiaries, and affiliates,

10  and each of their successors and assigns, and its agents, attorneys, and other representatives releases all

11  persons including, without limitation, Defendant and each of its current and former officers, directors,

12  members, employees, shareholders and each of their predecessors, successors and assigns, and each of

13  their agents, attorneys, consultants, and other representatives from, and waives all claims which arise

14  from or pertain to, this action, including all claims for injunctive relief, damages, penalties, fines,

15  sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other

16  sum incurred or claimed, and/or claims that were asserted in CSPA's Complaint up to the Effective

17  Date.

18      48.     <u>Defendant's Release</u>. Upon the Effective Date of this Consent Decree, Defendant, on his

19  own behalf and on behalf of its current and former officers, directors, employees, members, and each of

20  their successors and assigns, and its agents, attorneys, and other representatives releases CSPA (and its

21  current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and

22  each of their successors and assigns, and its agents, attorneys, and other representatives) from, and

23  waives all claims which arise from or pertain to this action, including all claims for fees (including fees

24  of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could

25  have been claimed for matters associated with or related to CSPA's Complaint up to the Effective Date.

26      49.     Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or

27  take any position that it deems necessary or appropriate in any formal or informal proceeding before the

28  Regional Board, EPA, or any other judicial or administrative body on any other matter relating to storm

water discharges from the Facility occurring or arising after the Effective Date of the Consent Decree, but specifically excluding the discharges and all other matters addressed by this Consent Decree.

**V.      MISCELLANEOUS PROVISIONS.**

50.     No Admission of Liability. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

51.     Force Majeure. Force Majeure includes any act of God, war, fire, earthquake, or natural catastrophe; civil disturbance, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any force majeure event.

52.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

53.     Choice of Law. The laws of the United States shall govern this Consent Decree.

54.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

55.     Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail, or via electronic mail, with email confirmation of receipt by the receiving party, to the following individuals:

If to Plaintiff:

Layne Friedrich
        Layne@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

With copies to:

California Sportfishing Protection Alliance
Bill Jennings, Executive Director
        Deltakeep@me.com
3536 Rainier Avenue
Stockton, California 95204

If to Defendant:

Diane Kindermann Henderson
Abbott & Kindermann, LLP
        DKindermann@aklandlaw.com
2100 21st Street
Sacramento, California 95818

With copies to:

Jensen Precast
5400 Raley Boulevard
Sacramento, California 95838

Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Settling Parties may agree to transmit documents electronically or by facsimile.

56.     Effect of Consent Decree. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

57.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

58.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

59.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

60.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

61.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

62.     The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

63.     The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

APPROVED AS TO FORM

                                        LAWYERS FOR CLEAN WATER, INC.


Dated: _____2014          By: _____
                                        Layne Friedrich
                                        Attorneys for Plaintiff

                                        ABBOTT & KINDERMANN LLP

Dated: _____2014          By: _____
                                          Diane Kindermann Henderson
                                          Attorneys for Defendant

APPROVED AS TO CONTENT

Dated: _____2014          By: _____
                                          Bill Jennings
                                          California Sportfishing Protection Alliance

Dated: _____2014          By: _____

                                          Jensen Precast

   **IT IS SO ORDERED:**

Dated:  November 25, 2014

                                     _____
                                     MORRISON C. ENGLAND, JR., CHIEF JUDGE
                                     UNITED STATES DISTRICT COURT